UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WILLIAM G. BISHOP             CIVIL ACTION NO. 05-2224

versus                        JUDGE WALTER

COMMISSIONER OF THE SOCIAL    REFERRED TO:
SECURITY ADMINISTRATION       MAGISTRATE JUDGE HORNSBY

MEMORANDUM RULING

**Introduction**

William G. Bishop ("Plaintiff") applied for disability benefits based primarily upon problems associated with his left knee and right hand. Plaintiff, who has a twelfth grade education and work experience as an electrician and laborer, was 51 years old when ALJ W. Thomas Bundy denied his claim.

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not engaged in substantial gainful activity (step one) and that he was status post-fracture left knee, an impairment that is severe within the meaning of the regulations (step two) but not severe enough to meet or medically equal a listed impairment (step three) that would compel a conclusion of disability without regard to the claimant's age, education or vocational factors.

The ALJ then reviewed and assessed the testimony and medical evidence. He determined that Plaintiff had the residual functional capacity ("RFC") for a full range of light

work. That RFC did not permit Plaintiff to perform his past relevant work (step four), so the ALJ turned to the step five inquiry as to whether Plaintiff could perform other jobs that are available in the economy. The ALJ looked to Medical-Vocational Rule 202.14, which directs a finding of not disabled for a person who can perform light work and who has Plaintiff's age, education and skill level.

The Appeals Council denied a request for review. Plaintiff then filed this civil action seeking the limited judicial relief that is available pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Issues on Appeal**

Plaintiff states in his brief that the "only issue" before the court is whether the Commissioner's decision is supported by substantial record evidence. His arguments with respect to that general issue, however, focus on five areas where Plaintiff believes the ALJ erred. Plaintiff contends that the ALJ erred: (1) in his assessment of Plaintiff's credibility with respect to his pain and hand-wrist problems; (2) when he determined that Plaintiff had the RFC for light work; (3) when he did not find that depression was a severe impairment; (4) when he did not employ a Medical-Vocational rule applicable to sedentary work to direct

a finding of disabled; and (5) when he did not call upon a vocational expert to meet the agency's step five burden.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Depression**

Plaintiff injured his knee in a 1988 motorcycle accident. He has been examined and treated at the VA Medical Center on several occasions in connection with the knee injury and other problems. The most significant other health problem is Plaintiff's chronic alcohol abuse. Plaintiff testified at the hearing that depression was among his problems, but he admitted he was not seeing a psychiatrist or psychologist and that none of his treating physicians had recommended such care. Tr. 162-63. Plaintiff later added that he was depressed because he was unable to support himself and had to depend on his family. He again stated that no one had suggested he needed to see a psychologist. Tr. 169-70.

The ALJ mentioned the testimony about depression, but the ALJ did not find that it was a severe impairment. He observed that the medical records contained "no complaints of depression nor any treatment for mental health problems" and that Plaintiff "takes no antidepressant medications nor does he receive any mental health counseling or psychiatric care." Tr. 16.

Plaintiff argues that the ALJ should have found depression to be a severe impairment. He cites the record of a July 2002 visit to the VA Medical Center that contains a note: "he does note fair depression in the last three months." Tr. 105. Plaintiff also points to an April 2003 visit in which it was recorded that Plaintiff had psycho-social stressors that included unemployment, poor relationships, financial problems and poor support. Plaintiff's GAF was scored as a 31, suggesting major impairment in several areas. Tr. 129. The Commissioner responds that this report was at a time when Plaintiff was enrolling in the hospital for alcohol detoxification after throwing up blood for two days.

Given the limited, episodic evidence of depression that was never treated with medication or therapy, and the ALJ's resolution of Plaintiff's credibility discussed below, there is substantial evidence to support the ALJ's decision that Plaintiff did not have a severe mental impairment. Even if such an impairment has been demonstrated to have been at the severe level at one time, Plaintiff has not pointed to evidence that the impairment satisfied the twelve- month durational requirement. See Johnson v. Bowen, 864 F.2d 340, 346 (5th Cir. 1988).

**Credibility**

Plaintiff testified that his motorcycle accident occurred when a teenage driver who had just received her license struck him head on. Plaintiff's right wrist was broken, and the middle finger on his right hand was removed but reattached by physicians. Plaintiff's knee was also injured seriously. Plaintiff testified that the knee problem prevented him from climbing steps or ladders and limited his ability to walk. Plaintiff testified that he used both a knee brace and a cane to keep his knee from giving out when walking. He said doctors had suggested that he would eventually need knee replacement, but the VA had not yet granted permission for the operation. Plaintiff said he had limited grip strength in his right hand and only in a couple of fingers. He added that his wrist would move but not without a lot of severe pain. Plaintiff denied that he would be able to use a screwdriver or hammer. Tr. 165-68.

Plaintiff testified that he could walk only a couple of blocks. He said he could climb stairs with one foot trailing, but he could not climb a ladder. He estimated that he could stand no more than 10 minutes at a time and lift no more than 10 pounds. Plaintiff said he did not drive because he could no longer bend his leg enough to work the pedals. Tr. 172-74.

Dr. Raymond Cush performed a consultative examination. Plaintiff reported to Dr. Cush that he had worked after his 1988 accident until the ammunition plant where he worked closed in 1990. Plaintiff then began working as an electrician and refrigeration repairman, but he reported that he is now turned down for work because there are no limited duty jobs

available. Plaintiff denied that his alcohol history affected his ability to get hired. Plaintiff reported that he walked a mile three times a week, lived alone, and was able to care for himself, cook and keep house. Tr. 118.

On physical examination, Plaintiff was able to walk on his tiptoes and his heels and could support himself with either leg independently. Plaintiff said he could straighten his injured leg fairly fully but could not flex it beyond the 90 degree range. When attempts were made to test the joint range of the knee, Plaintiff did not allow relaxation of the muscles so that full passive testing could be made. Plaintiff's grip was "good in both hands and his dexterity is good." His grasping ability was good in both hands, even though Plaintiff complained that he could not grip well with the right hand when using a screwdriver motion. Tr. 119.

Dr. Cush's impression included findings that Plaintiff was able to stand and walk but maybe not crawl or use a ladder readily if his knee problem was as stated. Dr. Cush believed that Plaintiff could lift and carry and that he could handle objects with good dexterity. Tr. 119-20.

Dr. E. C. Simonton, Jr., an orthopedic specialist, conducted a consultative examination. Examination showed a full range of motion in all fingers of both hands and the left wrist. There was some limitation of movement in the right wrist, and grip strength was less with the right hand than the left. Plaintiff's gait was "normal without limp and without need for assistive devices." An X-ray of the right wrist and hand showed a healed fracture

in excellent position and alignment. The left knee showed healing with good position and alignment of the fracture fragments. Dr. Simonton concluded that Plaintiff had residual restriction of motion in left knee "but does not have difficulty standing or walking." He stated that Plaintiff "should not be required to perform work requiring knee bending activities such as squatting or frequent stair climbing." And he concluded that Plaintiff "does not have residual in his right wrist or hand" and that he should be able to work "without difficulty" in maintenance or other activities that do not require climbing. Tr. 121-22.

A state agency physician reviewed the medical records and found that Plaintiff could stand or walk (with normal breaks) for a total of 6 hours per workday, could lift or carry weight in excess of that required by light work, and had a limited ability in the lower extremities to use foot controls. He also found that Plaintiff could never climb but could occasionally stoop, kneel, crawl, etc. Tr. 33-35.

Plaintiff faults the ALJ's credibility assessment of Plaintiff's testimony about the extent of his limitations. Plaintiff acknowledges that it is apparent upon review of the ALJ's decision that the ALJ based his assessment primarily upon what he perceived to be a lack of supporting objective evidence. That is correct. Consultative examinations included findings inconsistent with Plaintiff's testimony, and Dr. Cush's report included Plaintiff's statement that he walked a mile three times a week. That is squarely at odds with Plaintiff's hearing testimony about his abilities. Plaintiff notes that there is evidence from the VA Medical Center to show trauma to his knee, but that is not disputed. He also points out that VA

physicians opined that Plaintiff "possibly will need a knee replacement in the near future." Tr. 107. That evidence may support Plaintiff's claims more than the reports of the consultative physicians, but the ALJ had ample first-hand medical evidence that fully supported his credibility assessment. An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ's credibility assessments in this case are not subject to judicial reversal.

**RFC Finding**

The ALJ found that Plaintiff had the RFC to perform light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though a job may require lifting of only very little weight, it will still be classified as light rather than sedentary if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. A person must have the ability to do substantially all of these activities to be found capable of performing the full range of light work. 20 C.F.R. §§ 404.1567(b) and 416.967(b). Light work requires the ability to walk or stand for 6 hours, with normal breaks, in an 8-hour workday. Social Security Ruling 83-10.

Plaintiff generally contests the conclusion that he could stand or walk, as stated by Dr. Simonton, for 6 hours per day on a day in, day out basis. He faults Dr. Simonton's report for

not assigning specifically how many hours Plaintiff could perform such activities, but the clear import of Dr. Simonton's report is that there is no such limit. Plaintiff may disagree with Dr. Simonton's conclusion, but it was based upon a physical examination and provided substantial evidence to support the ALJ's decision.

Plaintiff also notes that the agency physicians found that Plaintiff had the limited ability to push or pull controls with his lower extremities. The full range of light work includes jobs that require sitting most of the time with "some" pushing and pulling of arm or leg controls. The state agency physician indicated a limitation but did not suggest that it precluded some such activity. He was not specific in that respect, but he did rely heavily upon Dr. Cush's report, which would not preclude some such activity. Substantial evidence supports the ALJ's interpretation of the medical evidence and his RFC assessment.

**Rule 201.14**

Plaintiff suggests the ALJ should have employed Rule 201.14, which applies to persons with the maximum RFC for sedentary work, to direct a finding of disabled. The ALJ found that Plaintiff had an RFC for light work, and that finding has been affirmed above. Accordingly, the ALJ did not err in declining to apply the rule suggested by Plaintiff.

**Vocational Expert**

Plaintiff argues that the ALJ's step five reliance upon the Guidelines was in error because of Plaintiff's alleged non-exertional impairments. At the fifth step, determining whether Plaintiff is able to perform work that is available in the national economy, the

Commissioner may meet his burden of proof by looking to the Medical Vocational Guidelines found at 20 C.F.R. §404, Sub-part P, Appendix 2.  The Commissioner may rely <u>exclusively</u> on the Guidelines if (1) the claimant suffers only from exertional impairments or (2) the claimant's nonexertional impairments do not significantly affect his RFC.  <u>Id</u>. § 404.1569; <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1304 (5th Cir. 1987).  If nonexertional impairments do significantly affect the plaintiff's RFC, the Commissioner may look to the Guidelines for <u>guidance</u> but must also look to expert vocational testimony or other similar evidence to meet his burden of proving that such jobs exist.  <u>Fraga</u>, <u>supra</u>.

Plaintiff asserts that he has non-exertional impairments in the form of depression, chronic pain and manual dexterity problems in his right hand.  The ALJ did not find that any of those alleged impairments were severe within the meaning of the regulations.  His findings are supported by the objective medical evidence, and his assessment of Plaintiff's credibility (on which these alleged impairments largely rest) also survives judicial review.  Accordingly, the ALJ did not err by relying upon the Guidelines.  A judgment will be entered affirming the Commissioner's decision.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 12th day of March, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE